IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

**FILED**

OCT 1 4 2011

U.S. CLERK'S OFFICE
INDIANAPOLIS, INDIANA

| | | |
|---|---|---|
| American Petroleum Institute, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. _____ |
| | ) | |
| Tailor Made Oil Co, LLC, TM Oil, LLC, | ) | |
| Circle Town Oil, William R. Selkirk, | ) | |
| Rebecca Selkirk, Lincoln R. Schneider, | ) | **1 : 11 -cv- 1 3 8 6 TWP -TAB** |
| and Jafarikal Corporation, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

As its Complaint in this action, Plaintiff American Petroleum Institute ("API"), by

its undersigned attorneys, alleges as follows, upon actual knowledge with respect to itself and its

own acts, and upon information and belief as to all other matters:

### NATURE OF THE CASE

1.      This is an action for trademark infringement, counterfeiting, trademark dilution,

false advertising, breach of contract, deceptive trade practices, and unfair competition under

federal, state, and/or common law.  API brings this action because Defendants, individually and

in association with each other and/or third parties, have, without authorization, manufactured,

distributed, and/or sold engine oil bearing copies or imitations of API's certification marks

and/or trademarks.

2.    No legitimate reason exists for Defendants' unauthorized use of API's certification marks and/or trademarks.  Defendants are not currently licensed by API to use its certification marks, and Defendants' products do not meet the standards applicable to use of API's certification marks.  Despite the absence of a license, Defendants have offered, sold, and distributed motor oil bearing copies or imitations of API's certification marks and trademarks with full knowledge of and reckless disregard for API's rights and with the intention of deceiving the public, and unfairly trading on the goodwill of API and its marks.

## JURISDICTION AND VENUE

3.    This Court has jurisdiction over the subject matter of this action pursuant to 15 U.S.C. §§ 1114, 1116, 1121, and 1125(a); and 28 U.S.C. §§ 1331, 1332, 1338(a), 1338(b), and 1367.  This matter in controversy exceeds the sum or value of $75,000, exclusive of attorneys' fees and costs.

4.    API's claims arise in part in this District as well as in various other states and areas where Defendants have offered, sold, and/or distributed products bearing marks and names that violate API's rights.  Upon information and belief, Defendants have a place of business and/or reside, and/or transact business in this District.  Venue is accordingly proper pursuant to 28 U.S.C. § 1391(b).

## THE PARTIES

5.    Plaintiff API is a District of Columbia corporation, with a business address at 1220 L Street, N.W., Washington, D.C. 20005.  API is the nation's leading trade association for the petroleum and natural gas industry.

6.     Defendant Tailor Made Oil Co, LLC ("Tailor Made") is a limited liability company of the State of Indiana with a business address at 544 N. Jacksonburg Road, Cambridge City, Indiana 47327. Tailor Made is in the business of bottling and distributing engine oil.

7.     Defendant TM Oil, LLC ("TMO") is a limited liability company of the State of Indiana with a business address at 7571 Meadow Ridge Drive, Fishers, Indiana 46038. TMO is in the business of bottling and distributing engine oil.

8.     Defendant Circle Town Oil ("Circle Town") is the assumed business name of TMO with a business address at 7571 Meadow Ridge Drive, Fishers, Indiana 46038. An assumed business name request for Circle Town was filed in Hamilton County, Indiana. Circle Town is in the business of bottling and distributing engine oil.

9.     Defendants Tailor Made, TMO, and Circle Town are related and/or commonly owned, commonly held, and/or commonly controlled.

10.    Defendant William R. Selkirk ("Mr. Selkirk") is an individual domiciled in Cambridge City, Indiana. Mr. Selkirk is the owner and/or Member of and registered agent for Defendants Tailor Made, TMO, and/or Circle Town.

11.    Defendant Rebecca Selkirk ("Mrs. Selkirk") is an individual domiciled in Cambridge City, Indiana. Mrs. Selkirk is an owner and/or Member of Defendants Tailor Made, TMO, and/or Circle Town.

12.    Defendant Lincoln R. Schneider ("Schneider") is an individual domiciled in Fishers, Indiana. Schneider is a Member, owner, and/or President of Defendants Tailor Made, TMO, and/or Circle Town.

13.     Defendant Jafarikal Corporation ("Jafarikal") is a corporation of the State of New York with a business address at 240-10 142nd Avenue, Rosedale, New York 11422. Jafarikal is in the business of distributing engine oil bottled by Defendant Tailor Made.

## API AND ITS CERTIFICATION MARKS

14.     API is the leading trade association for the petroleum and natural gas industry in the United States. API was established to afford a means of cooperation between the industry and the government in all matters of national concern, foster foreign and domestic trade in American petroleum products, promote the interests of the petroleum industry, and promote the improvement of its members, and the study of the arts and sciences connected with the oil and gas industry.

15.     For more than ninety years, API has used the trademarks and trade names AMERICAN PETROLEUM INSTITUTE and API, together with its certification marks, for a wide variety of products, services, and programs aimed at the promotion, development, and improvement of the petroleum and natural gas industry.

16.     Since 1947, API has published engine oil standards for automotive and heavy-duty diesel engines. API's engine oil standard, API 1509, is now in its 16th edition.

17.     Since approximately 1971, API recognized engine oil categories as outlined in API's updated and current "Motor Oil Guide," included as Exhibit A to this Complaint.

18.     Since 1985, API has operated a certification program for engine oils designed to define, certify, and monitor engine oil performance deemed necessary for satisfactory equipment life and performance by vehicle and engine manufacturers, as well as consumers. API's *Engine*

4

*Oil Licensing and Certification System* ("EOLCS") is a voluntary licensing and certification program that authorizes engine oil marketers who meet specified requirements to use the API Quality Marks.

19.     EOLCS licensed engine oils are tested for meeting one of a number of service categories, as outlined in API's "Motor Oil Guide" (Exhibit A).  Engine oils that meet the standards for a service category may be identifed by the performance standard designation developed by API, namely, the "S__" designation.  Each advance in engine technology is reflected in a change of requirements and the second letter of the "S__" designation.  For example, the initial "SA" designation is designated as the necessary performance requirement by auto manufacturers for engines manufactured before 1930.  Between 2004 and October 2010, "SM" was designated as the necessary performance requirement by most manufacturers for all engines built prior to 2010.  In October 2010, the designation became "SN."

20.     Where a particular engine oil company offers more than one type of engine oil, each type must be separately tested and approved.  If API grants a license to use the API Certification Marks and "S___" designation for one product, that license does not extend to any other products by that manufacturer.  For example, if a company provides to API  test data supporting a "BRAND 5W-30 Oil," and enters into a licensing agreement to display the API Certification Marks on the "BRAND 5W-30 Oil," the company may not also display the API Certification Marks on a "BRAND 0W-40 Oil."

21.     Engine oils that meet specific API service categories are further defined by viscosity grade, as defined by the Society for Automotive Engineers (SAE) in its standard SAE J300—Engine Oil Viscosity Classification.  Engine manufacturers design their engines to

operate with a specific SAE viscosity grade and API service category of oil. Using the wrong

SAE viscosity grade and API service category may result in increased friction between engine

parts and may result in wear, corrosion, and damage to the engine.

22.    API sets engine oil standards in an open, transparent process which includes all

interested parties, including oil companies, oil additive companies, and vehicle and engine

manufacturers.  The performance requirements and test methods referenced in API engine oil

standards are established by vehicle and engine manufacturers and technical societies and trade

associations such as the American Society for Testing and Materials (ASTM), Society for

Automotive Engineers (SAE), and American Chemistry Council (ACC).

23.    API licenses those engine oils that meet API's engine oil requirements to

advertise this compliance by affixing the following famous, registered certification mark to the

containers for their goods:



**API Certification Mark "Starburst"**

24.    The API Starburst is a federally registered certification mark (Reg. No.1864428)

used exclusively in connection with the certification of engine oils for motor vehicles in

International Class A.  A true and correct copy of this registration is attached as Exhibit B.

25.    API also licenses those engine oils that meet API's engine oil requirements to advertise this compliance by affixing the following famous registered certification marks to their goods:



**API Service Symbol "Donut"**

26.    The API Donut is a federally registered certification mark (Reg. Nos. 1868779 and 1872999) used exclusively in connection with the certification of engine oils for motor vehicles in International Class A.  True and correct copies of these registrations are attached as Exhibit C.

27.    Pursuant to 15 U.S.C. §1115(a), API's federal registrations identified above constitute prima facie evidence of API's exclusive nationwide ownership of those registered marks.  Moreover, all three registrations have become incontestable and thus constitute conclusive evidence of API's exclusive right to those registered marks.

28.    API also has common law rights in the following certification marks:




29.     Collectively, the registered and common law marks are herein referred to as the "API Certification Marks."

30.     Currently, approximately 530 entities are licensed to use the API Certification Marks. These licensees must submit to testing by API. If an engine oil does not match the physical and chemical data on file with API, API works with the licensee to evaluate the nonconformity and takes appropriate corrective action.

31.     EOLCS is backed by an ongoing monitoring and enforcement program that ensures licensees adhere to program requirements. This includes running physical, chemical, and performance tests on licensed engine oils and verifying that the API Certification Marks are properly displayed on containers and convey accurate information to consumers. API 1509 describes the program's requirements, explains the current engine oil standards, shows how the API Certification Marks are to be used, and explains the monitoring and enforcement process.

32.     Manufacturers that can properly establish compliance with the API requirements are licensed to display the API Certification Marks on containers and packages of engine oil sold to the public. Appropriately licensed API Certification Marks have appeared on hundreds of millions of containers of engine oil sold over the years, and have become famous.

33.     API's EOLCS certification program and related API Certification Marks, are of vital importance to engine oil manufacturers, marketers, and consumers. An engine oil bearing one or both of the API Certification Marks informs purchasers that the oil: (a) is interchangeable or compatible with other engine oils, (b) has been formulated pursuant to recognized quality management systems that are designed to ensure purity and reliability, and (c) meets industry standards that are designed to ensure that engines perform in a safe, efficient, and appropriate

8

manner and thereby reduce the potential for engine damage, and maximizes engine performance. In short, end consumers rely on the API Certification Marks to be certain that the engine oil they purchase will perform as intended in accordance with industry standards.

34.     Engine oils that do not meet API's requirements and that are not licensed under API's Engine Oil Licensing and Certification System may not be as reliable or safe as engine oil that meets API's performance and quality standards. The use of the API Certification Marks on engine oil bottles containing engine oils that fail to meet API's performance and quality requirements will mislead end users as to the quality and performance of the engine oil. The use of such uncertified oil by unsuspecting end users could result in expensive engine damage or failure, denial of warranty claims by auto manufacturers, and loss of property.

## DEFENDANTS' WRONGFUL ACTS

35.     Defendants Tailor Made, TMO, Circle Town, Mr. Selkirk, Mrs. Selkirk, and Schneider (collectively, "the TMO Defendants") own and operate an interrelated group of companies that offer low-end engine oil in the United States and abroad under a variety of brand names.

36.     In March 2010, the TMO Defendants submitted an application for certification of six engine oils offered under the brand name TAILOR MADE OIL in viscosities of SAE 5W-20, 5W-30, 10W-30, 10W-40, 15W-40, and 20W-50. All claimed to meet API service category SM and at least one also claimed API service category CI-4. As part of this application process, the TMO Defendants represented and warranted that the oil that was the subject of the application met the product qualifications and provided apparently appropriate testing documentation to substantiate the representations. Based on these materials, API granted the

9

TMO Defendants a license to use the API Certification Marks on the products included in the TMO application for one year.

37.     In March 2011, as required by the license guidelines, TMO was required to report the volume of licensed engine oil sold and pay a license renewal fee. The TMO Defendants failed to comply with the renewal requirements and forfeited the right to use the API Certification Marks and/or the SM designation in any manner on or about March 20, 2011.

38.     Despite forfeiting the right to use the API Certification Marks and/or any currently valid "S__" designation, the TMO Defendants manufacture, bottle, and/or distribute engine oils that bear counterfeit imitations of the API Certification Marks and falsely represent that their engine oils qualify for API's "SG," "SL," and "SM" designations.

39.     Recent investigations by API indicate that this original (now expired) license was procured by the TMO Defendants using fraudulent testing documentation and that no engine oil manufactured, sold, or distributed by the Defendants under the TAILOR MADE brand ever qualified for API's certification program.

40.     In April 2011, API obtained a sample of the TAILOR MADE 10W30 SM product from Defendant Jafarikal. Laboratory testing of this product established that it does not meet the requirements for certification by API or qualify for the SM designation. Photographs of the bottle are attached as Exhibits D and E.

41.     The front label of the engine oil distributed by the TMO Defendants shown in Exhibit D features an imitation of the API Certification Marks, specifically, the API Starburst mark ("the Counterfeit Starburst"). By applying the Counterfeit Starburst mark to the front label

of the bottle, the TMO Defendants falsely represent that the engine oil is tested by API and meets API engine oil performance standards.

42.    The back label of the engine oil distributed by the TMO Defendants  shown in Exhibit E, features an imitation of the API Certification Marks, specifically, the API Donut marks ("the Counterfeit Donut").  By applying the Counterfeit Donut mark to the back label of the bottle, the TMO Defendants falsely represent that the engine oil is tested by API and meets API engine oil performance standards.

43.    In addition to the fraudulent use of the API Certification Marks, the back label (Exhibit E) also falsely states: "API Service SM, SL, and SG."  This statement falsely advertises that the engine oil inside the bottle meets the requirements for API's SG, SL, and SM designations.

44.    In addition to the false claims made on the bottles themselves, the TMO Defendants advertise and disseminate false claims regarding the certification of their products on the website www.tailormadeoilco.com.  Specifically, they fraudulently use the API Certification Marks to promote their products and falsely state and/or imply that their products meet or exceed API's performance standards.  Printouts from www.tailormadeoilco.com are attached as Exhibit F.

45.    The TMO Defendants use the genuine API MADE FOR GASOLINE ENGINES Starburst mark on and in connection with engine oil despite the fact that they are no longer licensed to do so, as shown in http://www.tailormadeoilco.com/images/5w30Synthq.jpg (Exhibit G).

46.     The TMO Defendants also offer engine oils bearing the API Certification Marks (or imitations of such marks) and API's SM designation under the brand CIRCLE TOWN OIL. (Exhibit H).  These representations are false.  API does not and has never licensed the use of the API Certification Marks and/or and "S___" designation, including but not limited to the SM designation, for the CIRCLE TOWN OIL brand.

47.     The TMO Defendants advertise the CIRCLE TOWN OIL products at www.circletownoil.com and www.circletownoilafrica.com.  These websites contain numerous photographs of CIRCLE TOWN-branded engine oil bearing at least the Starburst mark, which may only be placed on the front of the bottle by authorized licensees.  Comments posted on the www.circletownoil.com website by the TMO Defendants falsely state and/or imply that their products meet or exceed API's performance standards and/or are certified by API.  Printouts from www.circletownoil.com and www.circletownoilafrica.com are attached as Exhibits I and J.

48.     The TMO Defendants also offer engine oils bearing the API Certification Marks and API's SM, SL, and SJ designations under the brand L&V PISTONS OIL.  As shown in Exhibit K, the L&V product bears that same UPC code (8858101497) as the TAILOR MADE and CIRCLE TOWN-branded products. L&V PISTONS OIL has never been granted a license to use the API Certification Marks or any API "S___" designation.

49.     Defendant Jafarikal distributes engine oil supplied by the TMO Defendants under the TAILOR MADE brand and bearing the fraudulent API Certification Marks.  With full knowledge that the goods are not licensed by API, do not meet API's performance standards, and do not qualify for any currently valid "S___" designation, Defendant Jafarikal sells these inferior products to the U.S. government, including, but not limited to, the General Services

Administration, the U.S. Navy, the U.S. Army, and the Department of Homeland Security. Defendant Jafarikal markets TAILOR MADE engine oils using the slogan, "When you need the highest level of quality, choose the company the U.S. Navy demands!" Printout of marketing materials attached as Exhibit L.

50.     In April 2011, API obtained several samples of the TAILOR MADE engine oil offered by Jafarikal. Subsequent laboratory tests of the TAILOR MADE brand 10W30 engine oil established that it did not meet API's performance standards, and does not qualify for any currently valid "S__" designation.

51.     In September 2011, Defendant Jafarikal launched a website at www.jafcorp.com falsely advertising that the TAILOR MADE products it distributes meet or exceed API standards. Printouts from www.jafcorp.com are attached as Exhibit M.

### INJURY TO API AND THE PUBLIC

52.     Defendants' unauthorized use of the API Certification Marks, along with their false representations that their products are API certified and conform to the requirements of API's "S__" designations, have irreparably injured and, if permitted to continue, will further irreparably injure API, its marks, the goodwill associated with its marks, and its reputation as the certifier of high-quality products.

53.     Defendants' actions described above are likely to cause confusion, mistake, or deception as to the source or origin of Defendants' goods; and are likely to falsely suggest a certification, connection, sponsorship, license, approval, and/or association of Defendants and Defendants' goods with API.

54.     Defendants' continued use of the API Certification Marks and "S__" designations for engine oils that fail to meet API engine-oil performance standards harm the public by causing

13

expensive engine damage or failure, denial of warranty claims by auto manufacturers, and loss of property.

55.    Defendants' continued use of the API Certification Marks and "S__" designations for engine oils that fail to meet API engine oil performance standards harm the public by causing expanding tax revenues on substandard and dangerous goods not suited to the needs of the government.

56.    API has no adequate remedy at law.

**FIRST CLAIM FOR RELIEF**
**TRADEMARK COUNTERFEITING UNDER**
**SECTIONS 32(a) AND 34(d) OF THE LANHAM ACT**
**15 U.S.C. §§ 1114(a), 1116(d) and 1127**
**AND**
<u>**UNDER IND. CODE § 35-43-5-2(a)**</u>

57.    API repeats and realleges the allegations set forth in each of the paragraphs above.

58.    In their use of the API Certification Marks, Defendants, individually and collectively, have copied API's federally registered certification marks.

59.    Defendants' marks are identical to and/or substantially indistinguishable from the registered API Certification Marks.

60.    Defendants' willful and deliberate actions constitute counterfeiting of API's federally registered API Certification Marks, in violation of Sections 32(a) and 34(d) of the Lanham Act, 15 U.S.C. §§ 1114(a), 1116(d), and 1127, and Ind. Code. § 35-43-5-2(a), causing damage to API.

## SECOND CLAIM FOR RELIEF
## TRADEMARK INFRINGEMENT UNDER
## SECTION 32(1) OF THE LANHAM ACT
## 15 U.S.C. § 1114(1)

61.    API repeats and realleges the allegations set forth in each of the paragraphs above.

62.    Defendants' actions described above have caused, and are likely to cause, confusion, mistake, or deception of the public as to the source, certification, sponsorship, and/or approval of Defendants' goods.

63.    Defendants' willful and deliberate actions constitute willful infringement of each of API's federally registered API Certification Marks, in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

## THIRD CLAIM FOR RELIEF
## FALSE ADVERTISING AND UNFAIR COMPETITION UNDER
## SECTION 43(a)(1)(A) OF THE LANHAM ACT
## 15 U.S.C. § 1125(a)(1)(A)

64.    API repeats and realleges the allegations set forth in each of the paragraphs above.

65.    The aforesaid willful and deliberate acts of Defendants are likely to cause confusion, mistake, or deception as to the certification, origin, sponsorship, and/or approval of Defendants' goods with API, and thus constitute false advertising and false designations of origin in violation of Section 43(a)(1)(A) of the Trademark Act of 1946, as amended, 15 U.S.C. § 1125(a)(1)(A).

## FOURTH CLAIM FOR RELIEF
## FALSE ADVERTISING AND UNFAIR COMPETITION UNDER
## SECTION 43(a)(1)(B) OF THE LANHAM ACT
## 15 U.S.C. § 1125(a)(1)(B)

66.    API repeats and realleges the allegations set forth in each of the paragraphs above.

67.     The aforesaid willful and deliberate acts of Defendants misrepresent the nature, characteristics, or qualities of their goods and commercial activities, and thus constitute false advertising and false designations of origin in violation of Section 43(a)(1)(B) of the Trademark Act of 1946, as amended, 15 U.S.C. § 1125(a)(1)(B).

**FIFTH CLAIM FOR RELIEF**
**TRADEMARK DILUTION**
**UNDER SECTION 43(c) OF THE LANHAM ACT**
**15 U.S.C. § 1125(c)**

68.     API repeats and realleges the allegations set forth in each of the paragraphs above.

69.     Based on the inherent distinctiveness of the API Certification Marks; API's duration and extent of use of the marks; its duration and extent of advertising featuring the marks; the geographic areas in which it has sold, rendered, advertised, and/or certified goods and services featuring the marks; the amount and volume of sales under the marks; the degree of public recognition of the API Certification Marks; and the federal registration of the API Certification Marks detailed in Paragraphs 23 and 24, the API Certification Marks have become famous, as that term is used in Section 43(c) of the Lanham Act.

70.     The aforesaid willful and deliberate acts of Defendants, all occurring after the API marks became famous, are likely to dilute API's famous marks by creating an association between API and Defendants or Defendants' products that would impair the distinctiveness of API's marks in violation of Section 43(c) of the Trademark Act of 1946, as amended, 15 U.S.C. § 1125(c).

71.     The aforesaid willful and deliberate acts of Defendants, all occurring after the API marks became famous, are likely to dilute API's famous mark by creating an association

between API and Defendants and Defendants' products that is likely to harm API's reputation in violation of Section 43(c) of the Trademark Act of 1946, as amended, 15 U.S.C. § 1125(c).

## SIXTH CLAIM FOR RELIEF
## BREACH OF CONTRACT

72.     API repeats and realleges the allegations set forth in each of the paragraphs above.

73.     A contract existed between API and Defendants TMO and Schneider.  For good and valuable consideration, API licensed TMO and Schneider to use the API Certification Marks and SM designation in connection with certain TAILOR MADE brand engine oils.  TMO and Schneider agreed to maintain the quality of certain TAILOR MADE brand engine oils to comply with the most recent edition of the API 1509 standard.

74.     TMO and Schneider agreed to cease using the API Certification Marks and SM designation upon the expiration or termination of the license.  The license terminated on or about March 20, 2011.

75.     TMO and Schneider breached the license agreement by failing to comply with the most recent edition of the API 1509 standard.

76.     TMO and Schneider breached the license agreement by continuing to use the API Certification Marks, and/or confusingly similar or dilutive marks, upon the expiration or termination of the license.

77.     TMO and Schneider breached the license agreement by continuing to use the API SM designation upon the expiration or termination of the license.

78.     API was harmed, and continues to be harmed, by Defendants' breach.

## SEVENTH CLAIM FOR RELIEF
### TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION
<u>UNDER COMMON LAW</u>

79.    API repeats and realleges the allegations set forth in each of the paragraphs above.

80.    Defendants are explicitly and implicitly passing off their products as being certified by API and/or meeting the requirements of API's "S___" designations, thus causing injury to API's business and reputation.

81.    The aforesaid acts of Defendants constitute common law trademark infringement, passing-off, misappropriation of API's goodwill, and unfair competition in Indiana and other states where Defendants offer, sell, distribute, and/or advertise their goods, including this District, thereby causing a likelihood of confusion in violation of the common law of Indiana and the laws of other states, by reason of which API has suffered, and will continue to suffer, irreparable and pecuniary injury.

## EIGHTH CLAIM FOR RELIEF
<u>VIOLATION OF IND. CODE § 35-43-5-3(a)(6)</u>

82.    API repeats and realleges the allegations set forth in each of the paragraphs above.

83.    The aforesaid willful and deliberate acts of Defendants constitute unfair, unconscionable, and deceptive acts by causing a probability of confusion or misunderstanding as to the approval or certification of Defendants goods in violation of Ind. Code § 35-43-5-3(a)(6).

84.    API was harmed, and continues to be harmed, by Defendants' deceptions.

## NINTH CLAIM FOR RELIEF
## FORGERY IN
## <u>VIOLATION OF IND. CODE § 35-43-5-2(a)</u>

85.    API repeats and realleges the allegations set forth in each of the paragraphs above.

86.    The aforesaid willful and deliberate acts of Defendants constitute forgery under Ind. Code § 35-43-5-2(a).

87.    API was harmed, and continues to be harmed, by Defendants' actions.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, API prays that this Court enter judgment in its favor on each and every claim for relief set forth above and award it relief, including, but not limited to, the following:

A.    A preliminary and permanent injunction enjoining Defendants, their officers, directors, employees, agents, subsidiaries, related companies, representatives, distributors, dealers, and all persons in active concert or participation with any of them, from using in any form or manner the API Certification Marks, the name and mark American Petroleum Institute, the name and mark API, and any confusingly similar or dilutive marks or names, including but not limited to the Counterfeit Starburst and/or the Counterfeit Donut.

B.    A preliminary and permanent injunction enjoining Defendants, their officers, directors, employees, agents, subsidiaries, representatives, distributors, dealers, and all persons in active concert or participation with any of them, from taking any actions that falsely suggest that Defendants and/or Defendants' products are certified, licensed, or approved by API, or otherwise meet any of API's standards or specifications, including, but not limited to, API's SL designation, SM designation, or any other API "S__" designation.

C.      Awarding API monetary relief, including damages sustained by API in an amount not yet determined but believed to be well in excess of Seventy-Five Thousand Dollars, pursuant to 17 U.S.C. § 1117(a)-(b).

D.      Awarding API statutory damages of $1,000,000 per counterfeit mark per type of goods sold pursuant to 15 U.S.C. § 1117(c)(2).

E.      Ordering the seizure of Defendants' counterfeit goods, counterfeit packaging, the means of making the counterfeit goods and marks, and records documenting the manufacture, sale, or receipt of things involved in such violation, all pursuant to 15 U.S.C. § 1116(d).

F.      Ordering the destruction of Defendants' name plates and/or goods bearing the API Certification Marks, the name and mark American Petroleum Institute, the name and mark API, any confusingly similar or dilutive marks or names, and any other indicia of API, and the means of making the counterfeit goods, pursuant to 15 U.S.C. § 1118.

G.      Ordering Defendants to immediately issue corrective advertising and immediately notify in writing each purchaser of counterfeit and/or infringing goods, advising them that Defendants' counterfeit and infringing products were not certified or licensed by API, that Defendants used the API Certification Marks, the name and mark American Petroleum Institute, the name and mark API, API's SL or SM designation, and any confusingly similar or dilutive marks or names without the authorization or knowledge of API, and that the motor oils do not meet the requirements of API's SL or SM designations, or any other "S__" designation.

H.      Awarding API treble damages pursuant to 15 U.S.C. § 1117 and other applicable laws.

I.      Awarding API its attorneys' fees in this action pursuant to 15 U.S.C. § 1117 and other applicable laws.

J.    Awarding API its damages pursuant Ind. Code § 35-43-5-2(a) and Ind. Code §

35-43-5-3(a)(6) and other applicable laws.

K.    Awarding pre- and post-judgment interest.

L.    Awarding such other relief as this Court may deem appropriate.

Dated this 14th day of October, 2011          Respectfully submitted,


Jan M. Carroll, No. 4187-49
Ryan B. Bowers, No. 29171-49
Barnes & Thornburg LLP
11 South Meridian Street
Indianapolis, Indiana 45294
Telephone: 317-236-1313
Facsimile: 317-231-7433
jan.carroll@btlaw.com
ryan.bowers@btlaw.com

*Of Counsel*
B. Brett Heavner
Margaret A. Esquenet
Naresh Kilaru
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, L.L.P.
901 New York Avenue, N.W.
Washington, DC 20001
Telephone: (202) 408-4000
Facsimile:  (202) 408-4400

*Attorneys for Plaintiff, American Petroleum Institute*

INDS02 JMC 1189430v1

21