**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| AMERICAN PETROLEUM INSTITUTE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:11-cv-1386-TWP-TAB |
| | ) | |
| TAILOR MADE OIL CO., LLC, TM OIL, LLC, | ) | |
| CIRCLE TOWN OIL, WILLIAM R. SELKIRK, | ) | |
| REBECCA SELKIRK, LINCOLN R. | ) | |
| SCHNEIDER, and JAFARIKAL CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER ON PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

This matter is before the Court on Plaintiff's Motion for Preliminary Injunction (Dkt. 9). On October 18, 2011, Plaintiff American Petroleum Institute, Inc. ("API") moved for entry on preliminary injunctive relief against Defendants Tailor Made Oil Co., LLC ("Tailor Made"), William and Rebecca Selkirk (the "Selkirks"), and Jafarikal Corporation ("Jafarikal") (collectively, "Defendants"). Defendants have not contested or otherwise failed to respond to API's Motion for Preliminary Injunction (the "Motion"). On February 28, 2012, this Court ordered the parties to file a proposed order reflecting the relief requested by API in the Motion. The parties jointly submitted a proposed preliminary injunction order to the Court on March 13, 2012; however, the parties were unable to agree on all aspects of the proposed order. After carefully considered the parties' respective arguments relating to their proposed preliminary injunction order, this Order shall constitute the Courts' findings of fact and conclusions of law.

## I. FINDINGS OF FACT AND CONCLUSIONS OF LAW

1. API is a District of Columbia corporation, with a business address at 1220 L Street, N.W., Washington, D.C. 20005. API is the nation's leading trade association for the petroleum and natural gas industry.

2. Tailor Made is a limited liability company of the State of Indiana with a business address at 544 North Jacksonburg Road, Cambridge City, Indiana 47327. Tailor Made is in the business of manufacturing and selling bulk lubricants.

3. The Selkirks, are individuals domiciled in Cambridge City, Indiana. The Selkirks are the owners of Tailor Made.

4. William Selkirk is the registered agent for Tailor Made.

5. Jafarikal Corporation is a corporation of the State of New York with a business address at 240-10 142nd Avenue, Rosedale, New York 11422. Jafarikal is in the business of distributing engine oil bottled by Defendant Tailor Made.

6. The Court has jurisdiction over the subject matter of this action and the parties consenting thereto.

7. API is the leading trade association for the petroleum and natural gas industry in the United Sates. API was established to afford a means of cooperation between the industry and the government in all matters of national concern, foster foreign and domestic trade in American petroleum products, promote the interests of the petroleum industry, and promote the improvement of its members, and the study of the arts and sciences connected with the oil and gas industry.

8. For more than 90 years, API has used the trademarks and trade names AMERICAN PETROLEUM INSTITUTE and API, together with its certification marks, for a

wide variety of products, services, and programs aimed at the promotion, development, and improvement of the petroleum and natural gas industry.

9. Since 1947, API has published engine oil standards for automotive and heavy-duty diesel engines. API's engine oil standard, API 1509, is now in its 16th edition.

10. Since 1985, API has operated a certification program for engine oils designed to define, certify, and monitor engine oil performance deemed necessary for satisfactory equipment life and performance by vehicle and engine manufacturers, as well as consumers. API's Engine Oil Licensing and Certification System ("EOLCS") is a voluntary licensing and certification program that authorizes engine oil marketers who meet specified requirements to use the API Quality Marks.

11. EOLCS licensed engine oils are tested for meeting one of a number of service categories, as outlined in API's "Motor Oil Guide." Engine oils that meet the standards for a service category may be identified by the performance standard of designation developed by API, namely, the "S__" designation ("API Standard Engine Oil"). Each advance in engine technology is reflected in a change of requirements and the second letter of the "S__" designation. For example, the initial "SA" designation is designated as the necessary performance requirement by auto manufacturers for engines manufactured before 1930. Between 2004 and October 2010, "SM" was designated as the necessary performance requirement by most manufacturers for all engines built prior to 2010.

12. API sets engine oil standards in an open, transparent process which includes all interested parties, including oil companies, oil additive companies, and vehicle and engine manufacturers. The performance requirements and test methods referenced in API engine oil standards are established by vehicle and engine manufacturers and technical societies and trade

associations such as the American Society for Testing and Materials (ASTM), Society for Automotive Engineers (SAE), and American Chemistry Council (ACC).

13. API licenses those engine oils that meet API's engine oil requirements to advertise this compliance by affixing the following famous, registered certification mark to the containers for their goods:



Figure 1: API Certification Mark "Starburst"

14. The API Starburst is a federally registered certification mark (Reg. No. 1864428) used exclusively in connection with the certification of engine oils for motor vehicles in International Class A.

15. API also licenses those engine oils that meet API's engine oil requirements to advertise this compliance by affixing the following famous registered certification marks to their goods:



Figure 2: API Service Symbol "Donut"

16. The API Donut is a federally registered certification mark (Reg. Nos. 1868779 and 1872999) used exclusively in connection with the certification of engine oils for motor vehicles in International Class A.

17. Pursuant to 15 U.S.C. § 1115(a), API's federal registrations identified above constitute *prima facie* evidence of API's exclusive nationwide ownership of those registered marks. Moreover, all three registrations have become incontestable and thus constitute conclusive evidence of API's exclusive right to those registered marks.

18. API also has common law rights in the following certification marks:



19. Collectively, the registered and common law marks are herein referred to as the "API Certification Marks."

20. Manufacturers that can properly establish compliance with the API requirements are licensed to display the API Certification Marks on containers and packages of engine oil sold to the public.

21. API's EOLCS certification program and related API certification Marks are of vital importance to engine oil manufacturers, marketers, and consumers. An engine oil bearing one or both of the API Certification Marks informs purchasers that the oil: (a) is interchangeable or compatible with other engine oils, (b) has been formulated pursuant to recognized quality management systems that are designed to ensure purity and reliability, and (c) meets industry

standards that are designed to ensure that engines perform in a safe, efficient, and appropriate manner and thereby reduce the potential for engine damage, and maximizes engine performance.

22. According to API, Tailor Made and the Selkirks have manufactured and Jafarikal has distributed engine oil bearing an API Certification Mark and alleged imitations of the API Certification without authorization from API, as shown below:

 

Tailor Made and the Selkirks disagree with API's claims in this regard, but do not contest the entry of an injunction against them.

23. API alleges that Tailor Made and the Selkirks have manufactured and Jafarikal has distributed products marked as complying with API engine oil service category SM without having conducted the tests required by API to establish that the engine oil meets service category performance and quality requirements specified for SM. API further alleges that tested samples of TAILOR MADE brand 10W30 SM product from Jafarikal failed to meet API certification requirements or qualify for SM designation.

24. Tailor Made and the Selkirks have made no substantive arguments opposing to the entry of a preliminary injunction, but both Defendants continue to deny liability in this case.

25. With respect to Jafarikal, it has failed to respond to the Motion for preliminary injunction. As such, Jafarikal has not responded to Plaintiff's allegations of trademark infringement and false advertising, as well as to Plaintiff's argument regarding irreparable harm and inadequate remedies at law with well reasoned and substantive arguments. Jafarikal's failure

to respond to the Motion pursuant to Local Rule 7-1(c)(2)(A) constitutes waiver. *See Law v. Medco Research, Inc.*, 113 F.3d 781, 787 (7th Cir. 1997); *see also MCI WorldCom Network Servs., Inc. v. Atlas Excavating, Inc.*, 2006 WL 3542332 at *3 (N.D. Ill Dec. 6, 2006) (failure to respond constitutes waiver). Accordingly, Jafarikal is subject to the Court's preliminary injunction order.

26. To obtain a preliminary injunction, API must show "that it has (1) no adequate remedy at law and will suffer irreparable harm if a preliminary injunction is denied and (2) some likelihood of success on the merits." *Ezell v. City of Chicago*, 651 F.3d 684, 694 (7th Cir. 2011); *see also Christian Legal Soc'y v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006).

27. The Court finds that API is likely to establish that it has been and will continue to be irreparably injured by Defendants' unauthorized use of the API Certification Marks and alleged imitations thereof, and by Defendants' false representations that their products are API certified and conform to the requirements of API's "SM" designations.

28. In addition, API is likely to succeed on the merits of its infringement and false advertising claims. Specifically, Defendants' actions described above are likely to cause confusion, mistake, or deception as to the source, origin, or quality of Defendants' goods. Moreover, Defendants' actions are likely to falsely suggest a certification, connection, sponsorship, license, approval, and/or association of Defendants and Defendants' goods with API.[1]

Based on the foregoing findings of fact and conclusions of law, it is hereby **ORDERED, ADJUDGED, AND DECREED** that the Motion for Preliminary Injunction (Dkt. 9) is **GRANTED** as follows:

---

[1] The Court is ever mindful that this motion comes before the Court during the preliminary injunction stage. Given the unusual procedural posture of this case, the Court's ruling on this matter will not necessarily be binding on future rulings.

A. Defendants, along with any unnamed officers, directors, subsidiaries, and successors, are immediately and until the final judgment in the Action are PRELIMINARILY ENJOINED:

1. from using, registering, or reproducing any trademark or certification mark owned by API, whether registered or unregistered, or any imitations, or revisions thereof, (collectively, "the API marks");



2. from manufacturing, contracting to manufacture, assisting in the manufacture of bottling, ordering, and distributing, selling, advertising, refurbishing, altering, reconditioning, labeling, or re-labeling any engine oil products of any kind or size bearing the API Marks unless such engine oil products are obtained from an API-licensed source;

3. from infringing, diluting, or otherwise violating API's trademark rights in any and all of the API Marks, by using imitations or confusingly similar copies of

the API Marks, including but not limited to using starburst logos, circular logos, or concentric circular logos of the type shown below:

 

4. from stating, implying, or otherwise representing by any means whatsoever, directly or indirectly, that a Defendant's API standard engine oil products meet or exceed, API standards and/or API service categories or designations (e.g., API Service SM), and from stating, implying, or otherwise representing by any means whatsoever, directly or indirectly, without API's authorization that API has tested, certified, endorsed, or otherwise approved any API standard engine oil products offered, promoted, sold, made, distributed, or rendered by Defendants;

5. from including any reference to the API Marks or service categories, or any imitations thereof, on any promotional materials or any website under their control;

6. from distributing or selling any API standard engine oils unless they have permitted an API collection agent to take an audit sample of such oil for quality testing, and the audit collection for testing has been completed to API's satisfaction, which testing will be performed as expeditiously as is reasonably possible, as per paragraph B of this Order.

B.
1. Upon completion of every batch of API standard engine oil for sale or distribution, Tailor Made must notify API in writing through counsel that it intends to distribute API standard engine oil, and permit an API collection agent to select and take a sample of API standard engine oil at his discretion during normal business hours as arranged in advance with Tailor Made from either: (1) the full batch of API standard engine oil, prior to packaging the oil, or (2) from the entire batch of packaged API standard engine oil. Tailor Made shall make all API standard engine oil from each batch reasonably available for the API collection agent to take an audit sample from, at the agent's discretion. Tailor Made shall permit the API collection agent to take no more than four (4) quarts of API standard engine oil from each batch, and API shall bear the costs of taking additional amounts of API standard engine oil from each batch to complete any necessary audit testing. Tailor Made shall make no representation to any other party that any sampled batch of API standard engine oil is approved or endorsed by API in any way. Tailor Made shall bear any reasonable cost of the API testing.
2. Upon completion of every batch of API standard engine oil for sale or distribution, Jafarikal must notify API in writing through counsel that it intends to distribute API standard engine oil, and permit an API collection agent to select and take an audit sample of API standard engine oil at his full discretion from either; (1) the full batch of API standard engine oil, prior to packaging the oil, or (2) from the entire batch of packaged API standard engine oil. Jafarikal shall

make all API standard engine oil from each batch available for the API collection agent to take a sample from, at the agent's discretion. Jafarikal shall permit the API collection agent to take no more than four (4) quarts of API standard engine oil from each batch, and API shall bear the costs of taking additional amounts of API standard engine oil from each batch to complete any necessary audit testing. Jafarikal shall make no representations to any other party that any sampled batch of API standard engine oil is approved or endorsed by API in any way. Jafarikal shall bear any reasonable cost of the API testing.

C.

1. Within ten (10) business days of entry of this Order, Defendants Tailor Made, the Selkirks, and Jafarikal must each submit to this Court an affidavit of compliance confirming that any API standard engine oil products or material in their control that are subject to this injunction have been removed from sale, circulation, or distribution and that they have established procedures to prevent such sale, circulation, or distribution until entry of a final judgment in this Action.

SO ORDERED: 04/27/2012

_____
Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Holiday W. Banta
ICE MILLER LLP
h.banta@icemiller.com

James F. Bleeke
 BLEEKE DILLON CRANDALL PC
jim@bleekedilloncrandall.com

Ryan Bruce Bowers
BARNES & THORNBURG LLP
ryan.bowers@btlaw.com

Jan M. Carroll
BARNES & THORNBURG LLP
jan.carroll@btlaw.com

David Earl Dearing
david@dearinglawfirm.com

Margaret A. Esquenet
FINNEGAN HENDERSON FARABOW GARRETT & DUNNER, L.L.P.
margaret.esquenet@finnegan.com

Jana Eleonore Harris
ICE MILLER LLP
jana.harris@icemiller.com

B. Brett Heavner
FINNEGAN HENDERSON FARABOW GARRETT & DUNNER, L.L.P.
b.brett.heavner@finnegan.com

Christopher D. Simpkins
BLEEKE DILLON CRANDALL PC
chris@bleekedilloncrandall.com